DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Demetrius H. to appellee, Lucas County Children Services ("LCCS"), and terminated the parental rights of appellants Melissa H. and Kenneth S., the natural parents of Demetrius H. From that judgment, appellants have raised the following assignments of error:
 "I. THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 "II. THE TRIAL COURT'S GRANT TO PERMANENT CUSTODY BASED UPON REASONABLE EFFORTS BY APPELLEE TO [SIC] LUCAS COUNTY CHILDREN SERVICES BOARD (HEREINAFTER LCCSB), WAS ERROR AND PREJUDICED APPELANT'S [SIC]."
On May 25, 2000, LCCS filed a complaint in dependency seeking permanent custody of Demetrius H. who was born on January 28, 2000. LCCS first filed for permanent custody of Demetrius H. on March 1, 2000, and was awarded emergency shelter care custody of him at that time. However, because that complaint could not be heard within ninety days it was dismissed and LCCS refiled for permanent custody on May 25, 2000. The complaint alleged that LCCS has had an open case on Melissa H. for almost four years and that during that time LCCS obtained permanent custody of four of Melissa's other children. Kenneth S. is the father of one of those children. The complaint further alleged that Melissa has another child whose legal custody had been awarded to a relative in Baltimore, Maryland. The complaint stated that LCCS learned of Demetrius H.'s birth when he was admitted to the hospital on February 20, 2000 for a serious respiratory infection. During his hospitalization, Melissa and Kenneth, who have had a violent on-again off-again relationship, were involved in several altercations which resulted in Kenneth being escorted from the hospital by security. The complaint further alleged that Melissa was living with her parents who have a ten year history with child welfare authorities. In particular, the complaint alleged that while under the care of her parents, Melissa was subjected to sexual and/or physical abuse, that Melissa's father was convicted of criminally assaulting his sons when they were minors, that he has had substance abuse problems involving crack cocaine, marijuana and alcohol and that he never completed treatment for those problems. In addition, the complaint alleged that during Demetrius' hospitalization, Melissa's father was observed in the hospital smelling of alcohol. The complaint then alleged that it was unclear why Melissa had been unable to obtain and maintain her own housing given that she receives SSI income. Finally, the complaint alleged that Melissa has a history of mental health problems dating back to her teenage years, that some of her behavior has been violent and threatening to others and that police reports documenting conflict between Melissa and others are numerous. LCCS then requested that Demetrius be found dependent, that parental rights to him be permanently terminated and that LCCS be granted permanent custody of him. In a shelter care hearing of the same day, the parties agreed that LCCS would continue shelter care of Demetrius.
On August 22 and 23, 2000, the lower court proceeded with the adjudication and disposition hearings. At the adjudication hearing, LCCS first called Ellie Rieker, a social worker with St. Vincent's Mercy Medical Center. Rieker testified that when Demetrius was in the hospital in February 2000, appellants became involved in a number of screaming fights prompting Melissa to call security. Rieker was called in to speak with appellants and ultimately she worked out a visitation schedule so that neither Melissa nor Kenneth were in Demetrius' room at the same time. However, Melissa would often change her mind, allow Kenneth to come to the hospital while she was there and then call security to have him removed.
LCCS next called a number of police officers who testified regarding police reports that had been taken documenting altercations between Melissa and Kenneth. The officers authenticated the reports and the reports were then admitted into evidence. The reports demonstrate numerous instances of reports Melissa made to the police between February 1998 and May 2000, charging Kenneth with domestic violence, assault and telephone harassment. After most of those reports were filed, however, Kenneth was either never prosecuted or the charges were dismissed when Melissa failed to appear. LCCS then introduced into evidence a certified copy of a marriage certificate demonstrating that Melissa and Kenneth married on August 18, 2000, four days before the adjudication and disposition hearings on this matter.
LCCS next called Lola Scott, an employee of SASI, to testify. Scott stated that John H., Melissa's father, had a history of alcohol problems, that he had been referred to SASI for treatment in February 1998, and that he was subsequently discharged from that program for failure to attend the required sessions.
Next, Ann Hodge, the LCCS ongoing caseworker for the H. family testified. Hodge stated that prior to Demetrius' entrance into the hospital, he was living with Melissa and her parents, John and Peggy H. Hodge further testified that she was familiar with John and Peggy H. through Melissa's prior contacts with LCCS. Through those cases, Hodge learned that John had an alcohol problem and that he had abused and neglected his own children. During prior cases in which Melissa's parental rights to four of her other children were terminated, John and Peggy H. were found to be inappropriate for placement. Hodge further reported that while Demetrius was in the hospital, John H. came to the hospital smelling of alcohol. With regard to the prior cases, Hodge testified that the case plans encouraged Melissa to obtain safe stable housing away from her parents, obtain a drug assessment and get counseling to deal with anger management. As of May 2000, however, Melissa had not successfully dealt with those issues. Accordingly, when the present case was filed, the goal of the case plan was permanent custody and LCCS did not offer any services to appellants. Hodge did admit, however, that Melissa had been involved in parenting classes for about three years and recently had been doing a better job than she had in the past. Hodge further testified that Kenneth came into Melissa's life in early 1998, and that from early on the couple had a very volatile relationship. Finally, Hodge testified that with regard to Demetrius' welfare, the domestic violence issues between Melissa and Kenneth were her primary concern.
At the conclusion of the adjudication hearing, the lower court found Demetrius to be dependent. The court based this conclusion on its findings that while in his mother's care, Demetrius was exposed to ongoing physical and verbal fighting between his parents and lived in his grandparents' home which exposed him to further violence, alcohol abuse and unstable housing. The case then proceeded to the disposition hearing at which Ann Hodge was the sole witness.
Hodge testified that in her opinion, permanent custody was in Demetrius' best interest in that he needed a permanent stable home. She did not believe appellants could provide that home in that they continued to have an ongoing volatile relationship that included frequent police interventions. Despite this history, appellants married. Hodge also expressed concern regarding Melissa's propensity for violence against others and herself. She relayed a recent incident in which Melissa got into a fight with and broke the jaw of her ex-husband's current wife and stated that in May 2000, Melissa tried to commit suicide. Hodge further stated that Melissa's lack of stability and inability to maintain safe housing were factors affecting her opinion. With regard to Kenneth, Hodge stated that during the earlier case regarding the termination of his parental rights to Diamond H., his daughter with Melissa, Kenneth had problems with anger management. The case plan in that case therefore required him to get anger management counseling and to attend parenting classes. He did not successfully complete either and when the present complaint was filed regarding Demetrius, Kenneth's problems were ongoing. With regard to a relative placement, Hodge testified that no relatives of either Melissa or Kenneth were appropriate or willing to accept custody of Demetrius.
In addition to Hodge's testimony, the lower court accepted the report and recommendation of the guardian ad litem, who recommended that LCCS be granted permanent custody of Demetrius. The guardian ad litem found that due to appellants' lifestyle, that consisted of inappropriate and child-endangering behavior, permanent custody was in Demetrius' best interest.
On September 20, 2000, the lower court filed a decision and judgment entry terminating appellants' parental rights and granting permanent custody of Demetrius to LCCS. In particular, the court found that appellants had demonstrated a lack of commitment to Demetrius by actions showing an unwillingness to provide an adequate permanent home. The court further found that violence remains a part of appellants' lives and that it had resulted in the termination of their parental rights to Diamond H., another child of their relationship. Additionally, the court found that Melissa had already lost permanent custody of three of her other children and that legal custody of a fourth was with her sister. Finally, the court found that LCCS had made reasonable efforts by providing basic case plan services in this case and in past cases but that appellants did not comply or change their behavior. The court then concluded that, based on the evidence presented, there was clear and convincing evidence to support a finding that Demetrius could not or should not be placed with either parent within a reasonable time and that permanent custody was in his best interest. It is from that judgment that appellants now appeal.
Because appellants' assignments of error are interrelated they will be addressed together. Appellants contend that the trial court's findings in support of the permanent custody award were not supported by clear and convincing evidence and that the court's determination that LCCS made reasonable efforts at reunification was in error.
The disposition of a child determined to be dependent, abused or neglected is controlled by R.C. 2151.353 and the court may enter any order of disposition provided for in R.C. 2151.353(A). However, before the court can grant permanent custody of a child to the agency, the court must determine: 1) pursuant to R.C. 2151.414(E) that the child cannot or should not be placed with one of his parents within a reasonable time; and 2) pursuant to R.C. 2151.414(D), that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4). R.C. 2151.414(E) provides that, in determining whether or not a child can or should be placed with a parent within a reasonable time, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time. Those factors include:
 "(1)Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
 "(11) The parent has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415
of the Revised Code with respect to a sibling of the child.
"* * *
 "(16) Any other factor the court considers relevant." R.C. 2151.414(E)
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469. In determining the best interest of the child, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including but not limited to:
"* * *
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
Upon a thorough review of the record in this case, we conclude that the trial court's findings that Demetrius could not or should not be placed with either of his parents within a reasonable time and that permanent custody was in Demetrius' best interest were supported by clear and convincing evidence.
Primarily, Melissa's parental rights to four other children and Kenneth's parental rights to one other child had recently been terminated. This finding alone was enough to support the court's decision. Moreover, it was well within the trial court's discretion to consider appellants' ongoing volatile relationship as a factor in making its determination. Accordingly, the first assignment of error is not well-taken.
In their second assignment of error, appellants challenge the trial court's determination that LCCS made reasonable efforts at reunification. While the trial court did make this finding, it is well-established that where a children services agency seeks original permanent custody of a child pursuant to R.C. 2151.353(A)(4), the agency is not required to establish a case plan. See In the Matter of: Misty B.
(Sept. 17, 1999), Lucas App. No. L-98-1431, unreported; In the Matterof: Stephanie H. (Sept. 17, 1999), Huron App. No. H-99-009, unreported. Accordingly, LCCS was not required to attempt reunification and the second assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellants.
 ____________________ PIETRYKOWSKI, P.J.
 Melvin L. Resnick, J., James R. Sherck, J., Mark L. Pietrykowski,P.J., CONCUR.